Filed 11/8/22  P. v. Lorenzo CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAIME LORENZO,<br><br>    Defendant and Appellant. | B315450<br><br>(Los Angeles County<br>Super. Ct. No. VA102845) |

APPEAL from an order of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge.  Reversed and remanded with directions.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant and appellant Jaime Lorenzo appeals from the trial court's denial of his Penal Code section 1172.6[1] petition for resentencing. We reverse and remand for a new hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following factual and procedural background are from our second nonpublished opinion in this case, *People v. Lorenzo* (Feb. 19, 2019, B285142):

"The following facts are from our prior nonpublished opinion in *People v. Carino* (Mar. 24, 2011, B220035). In 2009, defendant was 'convicted, following a jury trial, of the second degree murder of Albert Rojas in violation of . . . section 187, subdivision (a) (count 1) and the first degree murder of Federico Perez also in violation of section 187, subdivision (a) (count 2) . . . . The jury found true as to both [defendant and codefendant David Carino] the allegation that a principal was armed with a firearm in the commission of the murders within the meaning of section 12022, subdivision (a)(1).' (*Ibid.*) 'The jury found not true the allegation that [defendant] personally used a firearm within the meaning of section 12022.53, subdivision (b).' (*Ibid.*)

---

[1] All statutory references are to the Penal Code. Defendant filed his petition pursuant to section 1170.95. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the statute by its current section number only.

"'The same jury convicted [codefendant Cesar Cardenas] of vehicular manslaughter with gross negligence in the death of Rojas, in violation of section 192, subdivision (c)(1).' (*Ibid.*)

"The evidence at trial demonstrated that on an evening in October 2007, the two murder victims and their friends walked out of a bar. (*People v. Carino, supra*, B220035.) One of the friends, Erik Calderon, 'relieved himself between two parked cars in the parking lot . . . . Someone said, "Did you call us [expletive]?" Erik saw that a truck was parked in the middle of the parking lot with the doors open. Four people were standing in front of [one of Erik's coworkers]. The men were Juan Garcia, [defendant, and Carino]. Carino and one other man were holding guns. (*Ibid.*)

"'The two men with guns pointed them at Erik. Erik repeated that they were leaving.

"'[Victim] Rojas walked up to the group, and the men pointed their guns at him. Garcia asked Rojas who he was. Rojas raised his hands to his shoulders and raised his sweatshirt slightly. Rojas started walking backwards away from the men. Garcia swung at Rojas, grazing his chin. Garcia then told the other men to hold Rojas. The three men rushed toward Rojas, who continued to walk backwards and attempt[ed] to protect his face. Garcia continued swinging.

"'When Rojas reached the sidewalk on Gage [Street], [victim] Perez ran up and began swinging. Garcia and two of the men turned their attention to Perez and tried to hit him. One man stayed with Rojas. Carino held a revolver and looked at Perez. Rojas tried to get away and took a gun dropped by [defendant]. Rojas moved toward Perez. Carino fired at Perez, but the gun did not go off. He fired again and hit Perez. He then

fired three shots at Rojas, who was about five feet away. The shooting was described in the reverse order [by a worker from the bar].

"'Rojas was in front of a Maxima sedan. He fell after being hit by the gunshot. Before he hit the ground, the Maxima, driven by Cardenas, hit him. The front end of the car lifted. Rojas, who weighed 250 pounds, became stuck between the front wheels of the car. . . . [Cardenas made repeated attempts to move the car and eventually drove down the street], dragging Rojas under the car. Both [Rojas and Perez] later died [from their injuries].' (*People v. Carino, supra*, B220035.)

"'[Defendant] was interviewed by the police and told them that Carino shot Perez and Rojas. He said that Carino gave him a semi-automatic handgun before they got out of the truck. Carino had a revolver. During [defendant's] fight with a man, the gun fell out of [defendant's] pocket. [Defendant] heard gunshots, picked up his fallen gun, got into the truck and gave the gun back to Carino. They drove away.' (*People v. Carino, supra*, B220035.)

"'The trial court sentenced [defendant] to 25 years to life in state prison for the first degree murder conviction, plus a concurrent 15 year[s] to life term for the second degree murder conviction.' (*People v. Carino, supra*, B220035.) This court affirmed the conviction and judgment as to defendant. (*Ibid.*)

"On January 28, 2015, defendant filed a petition for a writ of habeas corpus in the trial court, contending that he could not be convicted of first degree murder as an aider and abettor with a natural and probable consequences theory under *People v. Chiu* (2014) 59 Cal.4th 155. The District Attorney filed a concession brief, agreeing that the petition should be granted. The District

4

Attorney elected not to retry defendant on first degree murder and instead agreed defendant's conviction on count 2 should be reduced from first degree to second degree murder, and that defendant should be resentenced accordingly.

"On March 17, 2017, the same trial judge who had presided over the trial and sentenced defendant, granted defendant's petition and reduced defendant's first degree murder conviction to second degree murder. In rejecting defendant's argument that he should be sentenced to involuntary manslaughter,[fn. omitted] . . . the trial court stated, 'Well, I have to say, counsel, that I heard the case, and I think this young man was up to—I think the evidence is ample and almost overwhelming that he was up to his ears in this whole transaction. [¶] He wasn't a bystander swept up by the events that—and there he is with his buddy and his gun falls out of his pocket and people die.'" (*People v. Lorenzo, supra*, B285142.)

On July 19, 2017, the trial court conducted defendant's resentencing hearing. It again rejected defendant's request that he be sentenced to involuntary manslaughter and probation and, instead, sentenced him to "'15 years to life. [¶] All other conditions as stated before apply.'" (*People v. Lorenzo, supra*, B285142.)

The following procedural background is from our third nonpublished opinion in this case, *People v. Lorenzo* (Oct. 14, 2020, B298311):

"On February 25, 2019, defendant filed a petition for resentencing pursuant to section [1172.6].[2] The matter was

_____

[2] The petition consisted of a declaration from defendant's trial counsel declaring defendant's eligibility for section 1172.6 resentencing. In his declaration, defense counsel stated that

assigned to the same trial judge who had presided over defendant's trial and sentencing hearings. On March 21, 2019, the prosecution filed a request for an extension of time to file an informal response to the petition. The trial court granted the request and continued the hearing to May 30, 2019.

"On April 22, 2019, in chambers, off the record, and without counsel for either party or defendant present, the trial court denied defendant's petition. It ruled, 'This is not a natural and probable [consequences] case. The law of the case was established by the Court of Appeal in People v[.]Carino et [al.] B220035 filed 3/24/11, wherein the court found petitioner was equally guilty. It was an aider and abettor theory.'" (*People v. Lorenzo, supra*, B298311.)

Defendant appealed from the trial court's ruling, contending the court erred in denying his section 1172.6 petition based on its finding that his murder convictions were not based on a natural and probable consequences theory. The Attorney General conceded the court erred. We reversed the court's order and remanded the matter to the trial court to appoint counsel and conduct further proceedings in accordance with the terms of section 1172.6. (*People v. Lorenzo, supra*, B298311.) Our remittitur issued on October 14, 2020.

At a December 18, 2020, hearing following our remand, the prosecutor stated, "I'll just be forthright with the court. Under the new [District Attorney]'s Special Directive 20[-]14, based on the fact that the only theory I argued in this case was natural

---

defendant requested the trial court to appoint counsel for him. Although no appointment order appears in the record, the trial court served trial counsel with all minute orders and trial counsel filed the notice of appeal.

and probable consequence[s], I am precluded from arguing implied malice murder since I did not argue that at the time of the trial.  [¶]  So I'm precluded from arguing and opposing this motion under that directive.  I don't know if the court feels comfortable making a ruling at this point."

The trial court—a judge other than the judge who presided over the trial—stated that it was not comfortable making a ruling because it was not familiar with the file or the facts.  It continued the matter and suggested the District Attorney's Office might want to file something to make a better record of its position given the nature of the charges.  The court also advised the prosecutor to notify the victims' families "before anything is finalized."

On January 12, 2021, the prosecution filed a response to defendant's petition for resentencing.  In part, the response quoted from the District Attorney's Office Special Directive 20-14 as follows:  "'If the jury was never instructed on direct aiding and abetting, implied malice murder, or any other intent-to-kill theory, or if the trial prosecutor never argued one of these theories, this Office will not argue that the petitioner can now be convicted under one of these theories during [section 1172.6] proceedings.  Theories must remain consistent.'"  Although the jury was instructed on implied malice murder, because the trial prosecutor relied only on a natural and probable consequences theory of guilt and did not argue second degree implied malice murder, the prosecution "submit[ted] on [defendant's] petition for resentencing and defer[red] to the Court's discretion."

On September 7, 2021, the trial court found that defendant had made a prima facie showing for relief.  The court stated that it would proceed to an evidentiary hearing.  The prosecutor and

defense counsel agreed. Because the victims' families were not present, however, the court stated that it would begin the evidentiary hearing but would not make a final ruling.

The trial court asked the prosecutor if she would be making a legal argument. The prosecutor responded that she was precluded from arguing a new theory of guilt pursuant to office policy, but believed she was "within [her] right to argue, perhaps, legal issues but not factual issues."

The trial court stated that it had not been the trial judge and so would need defense counsel's and the prosecutor's assistance in understanding the case. To that end, the court stated that if it ordered the prosecutor to respond to questions, it thought the prosecutor was obligated to answer. The prosecutor agreed.

Defense counsel interjected that the trial court found defendant had made a prima facie case and it was the prosecution's burden at an order to show cause hearing to present evidence that established beyond a reasonable doubt another theory of guilt. Because the prosecution "indicated they submit[ted]" and would not present evidence, defense counsel requested the court summarily grant the petition. The court responded that it understood the prosecution was not going to make an argument, but it believed it still had an obligation to "follow the law and to determine whether or not it can be proven beyond a reasonable doubt."

The trial court asked defense counsel if he had authority "that indicates that when there is a stipulation or an agreement between the parties, that in fact that means that [it] no longer ha[d] a duty to evaluate" the evidence. Defense counsel responded that he did not have such authority.

The prosecutor then clarified the prosecution's position. She explained that although she was precluded from arguing a new theory of guilt to the trial court, she "didn't mean to indicate, by submitting, that [she] was not expecting the court to rely on the record of conviction." Instead, she "fully expected the record of conviction to be considered by [the] court independently to determine if there was sufficient evidence to prove beyond a reasonable doubt the defendant guilty of murder under any other theory of liability." The trial court asked if the prosecutor was requesting it to consider the record of conviction. The prosecutor responded that she was. The court stated that it would review the record of conviction in making its ruling.

The trial court then reviewed videos of the incident with the assistance of defense counsel and the prosecutor and considered arguments concerning that evidence and the jury's not true finding on the personal use of a firearm allegation against defendant. At the conclusion of the day, the court continued the matter to September 29, 2021, for further proceedings.

On September 27, 2021, the prosecution filed an amended response to defendant's petition for resentencing. It argued that the record of conviction proved beyond a reasonable doubt that defendant was guilty of the second degree murders of Rojas and Perez under an implied malice theory of guilt.

At the resumed hearing on September 29, 2021, Rojas's family was present, Perez's family was not. The trial court ruled that because the jury found that defendant did not personally use a firearm, it would not consider "any facts that may indicate that the defendant pointed or waived [*sic*] a gun."

The prosecutor argued that the evidence supported an implied malice theory of second degree murder. That is,

defendant and Carino brought loaded guns to a fight where nobody else was armed; defendant knew Carino was armed; any "normal adult" knows loaded guns can kill; and defendant's act of arming himself in a show of aggression, force, and intimidation was inherently dangerous and led to Rojas's and Perez's deaths.

The trial court denied defendant's petition for resentencing. It found there was sufficient evidence that defendant was guilty of second degree murder as an aider and abettor under a direct aider and abettor theory. The court found it important that Carino handed defendant a gun before they got out of the car and defendant accepted the gun, Carino was armed when he got out of the car, Carino and defendant were the aggressors in confronting unarmed persons, and defendant stomped and kicked Perez in the head and face and continued to kick or stomp Perez after Carino shot Rojas and Perez was down. The court explained, "These are all facts that I believe would prove—or could prove beyond a reasonable doubt that the natural consequence of those acts was deliberately performed by a person who knows that their conduct endangers the life of another and acts with a conscious disregard for life."

The trial court further explained, "I believe that [defendant] did, in fact aid and abet [Carino]. [¶] The taking of the gun, [Carino] giving him the gun was for the purpose of aiding, assisting and encouraging in the acts that occurred. [¶] I believe there was sufficient facts in the record of conviction to prove beyond a reasonable doubt that [defendant] could be convicted of second degree murder beyond a reasonable doubt as a direct aider and abettor."

10

# III. DISCUSSION

A. *Section 1172.6, Subdivision (d)(2)*

Defendant contends the trial court violated the plain meaning of section 1172.6, subdivision (d)(2) when it refused to accept the parties' stipulation that he was eligible for resentencing. The court did not err.

Section 1172.6, subdivision (d)(2) provides, in relevant part, "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have the murder, attempted murder, or manslaughter conviction vacated and to be resentenced." The prosecutor did not, at any time during the section 1172.6 proceedings, waive a resentencing hearing and stipulate that defendant was eligible to have his second degree murder conviction vacated and to be resentenced.[3]

Instead, at the initial December 18, 2020, hearing, the prosecutor stated that because she only argued a natural and probable consequences theory at trial, Special Directive 20-14

---

[3] Thus, we need not decide whether a trial court is obligated to grant a petition when a prosecutor stipulates that a defendant is eligible for section 1172.6 resentencing. (But see *People v. Machado* (Oct. 31, 2022, B311023) ___Cal.App.5th___ [2022 WL 16458693 *15–16 ["[t]he trial court still has a duty to examine the evidence already in the record, namely the record of the defendant's conviction, along with any evidence the defendant chooses to introduce on his own behalf, so that the court can determine whether that evidence 'prove[s], beyond a reasonable doubt, that [he] is guilty of murder or attempted murder under California law as amended by' Senate Bill No. 1437. (§ 1172.6, subd. (d)(3))"].)

11

precluded her from opposing defendant's resentencing petition and arguing an implied malice murder theory of guilt. In its January 12, 2021, formal response to defendant's petition for resentencing, the prosecution submitted on defendant's petition and deferred to the trial court's discretion. At the September 7, 2021, hearing, the prosecutor argued to the court that she fully expected the court to consider the record of conviction in independently determining whether there was sufficient evidence to prove defendant guilty of murder under a viable theory of guilt beyond a reasonable doubt. Finally, in its September 27, 2021, amended response to defendant's petition for resentencing and at the September 29, 2021, hearing, the prosecution argued that the record of conviction proved beyond a reasonable doubt that defendant was guilty of the second degree murders of Rojas and Perez under an implied malice theory of guilt.

B.    *Section 1172.6, Subdivision (d)(3)*

Defendant contends the trial court erred in relying on the "no-longer valid theory of natural and probable consequences to find that [he] deliberately performed the acts recited by the [court] to 'endanger the life of another' and 'acts with a conscious disregard for life.'" Also, although not entirely clear, defendant appears to contend the court erred when it found substantial evidence—an incorrect standard—supported his murder convictions rendering him ineligible for section 1172.6 resentencing.

We reject defendant's first contention. The trial court properly recited elements of direct aiding and abetting second

12

degree murder, not natural and probable consequences murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 850 ["notwithstanding Senate Bill [No.] 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct *endangers the life of another* and *acts with conscious disregard for life*" (italics added)].)

As for defendant's second contention, we conclude that the record is ambiguous as to whether the trial court applied the correct standard, an issue we review de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981, abrogated on another ground in *People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*).)

"At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' ([§ 1172.6, subd. (d)(3)].)" (*Lewis, supra*, 11 Cal.5th at p. 960.) Whether a defendant committed murder under a still-valid theory is a factual question. (*People v. Clements* (2022) 75 Cal.App.5th 276, 294 (*Clements*).) "The Legislature made this clear by explicitly holding the People to the beyond a reasonable doubt evidentiary standard and by permitting the parties to submit new or additional evidence at the hearing on eligibility. ([§ 1172.6, subd. (d)(3)].) Reading the statute to require the trial judge to decide only whether substantial evidence supports a conviction under a still-valid theory would undercut that explicit requirement. The substantial evidence test asks only 'whether substantial evidence supports the conclusion of the trier of fact, *not whether the evidence proves* essential facts beyond a reasonable doubt, or by

13

clear and convincing evidence.' (*In re Joseph E*. (1981) 124 Cal.App.3d 653, 661 . . . , italics added.) By contrast, a fact finder tasked with holding the People to the beyond a reasonable doubt standard, 'must impartially compare and consider all the evidence that was received throughout the entire trial' and determine whether that 'proof . . . leaves you with an abiding conviction that the charge is true.' (CALCRIM No. 220; see also . . . § 1096 [reasonable doubt 'is that state of the case, which, after the *entire comparison and consideration of all the evidence*, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge' (italics added)].) We presume the Legislature was aware of this distinction when they enacted section [1172.6], and therefore conclude the plain text of the statute requires the trial judge to sit as a fact finder, not as a quasi-appellate court." (*Id*. at pp. 294–295.)

We cannot determine from this record whether the trial court, as an independent fact finder, found defendant guilty as a direct aider and abettor beyond a reasonable doubt or whether it, as a quasi-appellate court, found sufficient evidence to support such a finding. The court both stated, "I believe that [defendant] did, in fact aid and abet [Carino]," and "I believe there was sufficient facts in the record of conviction to prove beyond a reasonable doubt that [defendant] could be convicted of second degree murder beyond a reasonable doubt as a direct aider and abettor." These do not appear to be alternative findings. (See *Clements, supra*, 75 Cal.App.5th at pp. 288–289, 297–298.)

The Attorney General contends that, even assuming the trial court erred by applying the wrong statutory standard, any error is harmless because "[o]ther statements by the court made

14

absolutely clear how the court would have ruled under the [correct] standard . . . ." But the court's statements about defendant's participation in the crimes would apply with equal force whether the court was acting as an independent fact finder or reviewing for substantial evidence. Because we are unable to conclude that the court acted as an independent fact finder and applied the guilt beyond a reasonable doubt standard in finding defendant ineligible for resentencing relief, we reverse the court's order and remand the matter for further proceedings.[4]

---

[4] Because we cannot determine whether the court applied the correct standard of proof, we do not reach the issue of whether sufficient evidence supported the court's ruling that defendant was ineligible for resentencing.

## IV.   DISPOSITION

The order is reversed.  We remand for the limited purpose of allowing the trial court either to clarify that it acted as an independent factfinder in denying defendant's section 1172.6 petition, or to redetermine the matter, based on the evidence received at the prior evidentiary hearing, under the correct standard.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

MOOR, Acting P. J.

TAMZARIAN, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16